Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 146 | **DATE** | 6/17/2002 |
| **CASE TITLE** | Davis vs. U. S. Dept of Agriculture | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the defendant's motion for summary judgment (8-1) is granted. Judgment is entered in favor of the defendants.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 21 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| OR | courtroom deputy's initials | | Date/time received in Central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 0146 |
| | ) | |
| U.S. DEPARTMENT OF | ) | |
| AGRICULTURE; ANN VENEMAN, | ) | |
| Secretary of Agriculture, in her official | ) | |
| capacity; DAVID MIKELSON, | ) | **DOCKETED** |
| individually and in his official capacity; | ) | |
| RICARDO ALMENDAREZ, | ) | JUN 21 2002 |
| individually and in his official capacity; | ) | |
| and THOMAS PATE, individually and | ) | |
| in his official capacity. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Sandra Davis has sued the United States Department of Agriculture and various USDA employees alleging that she was subjected to race discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* This case is before the Court on the defendants' motion for summary judgment. Davis has not responded to that motion, despite having been given ten weeks to respond to it, nor has she sought an extension of time for filing a response.

### Facts

Because Davis failed to respond to defendants' 56.1 statement of material facts, we deem those facts admitted for purposes of ruling on the summary judgment motion. *See*

Local Rule 56.1(b)(3)(B); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527-29 (7th Cir. 2000).

Beginning in 1991, Davis, an African-American woman, worked for the USDA as the secretary to defendant David Mikelson, Regional Director of the USDA Food Stamp Program. In January 1997, the position of Program Technician in the Eligibility Management section of the Food Stamp division became vacant, and the USDA issued an internal vacancy announcement for the position. Davis, for whom the position would be a promotion, applied for the job. This internal announcement yielded only Davis as an applicant. As a result, defendant Ricardo Almendarez, Section Chief of the Eligibility Management section, decided to re-announce the position externally in order to obtain a larger pool of applicants. This re-announcement produced two additional applicants, Steffanie Czepiel and Ida Blair.

Almendarez and his assistant, Trish Solis, interviewed all three qualified candidates. In addition, Almendarez and Solis interviewed Davis' supervisor, David Mikelson, regarding Davis' job performance. Almendarez and Solis did not interview the supervisors of Blair or Czepiel because Almendarez was Czepiel's supervisor and Blair requested that her supervisor not be contacted. Almendarez and Solis ultimately decided to hire Czepiel, who is white, because she had more experience with certain required computer programs than the other applicants and had previously displayed a high level of initiative. Davis was viewed as a weaker candidate with regard to her computer skills; additionally, both Mikelson and Almendarez had previously observed that Davis spent inordinate amounts of time away from her desk socializing with other workers and did not always complete her assigned work in a timely fashion.

On April 9, 1997, Davis learned that she was not selected for the Program

Local Rule 56.1(b)(3)(B); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527-29 (7th Cir. 2000).

Beginning in 1991, Davis, an African-American woman, worked for the USDA as the secretary to defendant David Mikelson, Regional Director of the USDA Food Stamp Program. In January 1997, the position of Program Technician in the Eligibility Management section of the Food Stamp division became vacant, and the USDA issued an internal vacancy announcement for the position. Davis, for whom the position would be a promotion, applied for the job. This internal announcement yielded only Davis as an applicant. As a result, defendant Ricardo Almendarez, Section Chief of the Eligibility Management section, decided to re-announce the position externally in order to obtain a larger pool of applicants. This re-announcement produced two additional applicants, Steffanie Czepiel and Ida Blair.

Almendarez and his assistant, Trish Solis, interviewed all three qualified candidates. In addition, Almendarez and Solis interviewed Davis' supervisor, David Mikelson, regarding Davis' job performance. Almendarez and Solis did not interview the supervisors of Blair or Czepiel because Almendarez was Czepiel's supervisor and Blair requested that her supervisor not be contacted. Almendarez and Solis ultimately decided to hire Czepiel, who is white, because she had more experience with certain required computer programs than the other applicants and had previously displayed a high level of initiative. Davis was viewed as a weaker candidate with regard to her computer skills; additionally, both Mikelson and Almendarez had previously observed that Davis spent inordinate amounts of time away from her desk socializing with other workers and did not always complete her assigned work in a timely fashion.

On April 9, 1997, Davis learned that she was not selected for the Program

Technician position. She later contacted an EEOC counselor to complain that this non-selection was due to racial discrimination. She filed a formal complaint with the EEOC on February 24, 1998. On October 6, 2000, the EEOC rendered a decision affirming a finding by the USDA of no discrimination, and it issued Davis a right-to-sue letter. Davis filed suit in this Court on January 8, 2001.

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, a court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, Davis is not entitled to rely on the allegations of her complaint; she must respond to a summary judgment motion with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). As Davis has failed to respond to the motion, our job is to determine whether summary judgment is appropriate based on the story provided by defendants.

The complaint sets forth three claims: Count 1 alleges that defendants subjected Davis to racially discriminatory comments and otherwise discriminated against her on the basis of her race; Count 2 alleges that defendants retaliated against Davis for exercising her right to complain about racial discrimination to the EEOC; Count 3 alleges that defendants subjected Davis to a hostile work environment. We address each in turn.

*Count 1: Racial Discrimination*

Title VII prohibits discrimination on the basis of an employee's race. 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging race discrimination under Title VII "can prove such discrimination either by providing direct evidence of an employer's discriminatory intent or by showing disparate treatment using indirect evidence and the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Alexander v. Wisconsin Department of Health and Family Services*, 263 F.3d 673, 682 (7th Cir. 2001). Although it is not entirely clear due to her failure to respond to defendants' motion, the complaint suggests that Davis may be attempting to proceed under both methods.

First, the complaint alleges that defendant Mikelson made "racial[ly] discriminatory comments of a derogatory and insulting nature" to Davis. Complaint ¶¶ 20, 21. As noted above, Davis has not responded to the motion for summary judgment; however, documents Davis submitted to the EEOC (which defendants provided) suggest that this contention concerns her allegation that in August 1993, Mikelson told Davis that he and Almendarez decided to hire a white secretary to "break up the blackness" in the secretarial pool. Mikelson denies making the statement.

Mikelson's alleged comment is not sufficient to constitute direct evidence of discrimination in this case. Even if Mikelson made the alleged remark, the comment was made four years prior to the challenged employment decision and is too remote to give rise to an inference from which a reasonable jury could find intentional discrimination in her case. *See Indurante v. Local 705, International Brotherhood of Teamsters, AFL-CIO*, 160 F.3d 364, 367 (7th Cir. 1998) (remarks made 16 months before plaintiff's firing were deemed too remote). Moreover, Mikelson's alleged remark had nothing to do with the decision to hire Czepiel instead

-4-

of Davis, but instead related to an entirely separate hiring decision by the USDA. Accordingly, we find that the "direct evidence" offered by Davis is not sufficient to sustain her discrimination claim. *See Logan v. Kautex Textron North America*, 259 F.3d 635, 639 (7th Cir. 2001) (racially threatening comment did not constitute direct evidence of intentional discrimination in an employment decision because it was not causally related to the decision making process).

We thus turn to the question of whether Davis can prove discrimination under a burden-shifting approach. To prevail under a *McDonnell Douglas* approach, Davis must first establish a prima facie case of race discrimination, specifically, that she was a member of a protected class; she performed her job satisfactorily; she suffered an adverse action; and her employer treated similarly-situated white employees more favorably. *See, e.g., Cheek v. Peabody Coal Co.*, 97 F.3d 200, 204 (7th Cir. 1996). If she can establish a prima facie case, the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for its employment decision. *Alexander*, 263 F.3d at 682. If the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason is just a pretext for discrimination. *Id.* Though the burden of producing evidence shifts between the employee and the employer, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The defendants have not disputed that Davis can make out a prima facie case on her claim of discriminatory treatment vis a vis Czepiel. Rather, they offer a legitimate non-discriminatory reason for the decision not to promote Davis – that Czepiel was more qualified for

the job. Thus, we can move to the issue of pretext. An employee can survive a motion for summary judgment on the issue of pretext if she produces evidence that calls into question the employer's proffered reasons for the employment decision. *O'Connor v. DePaul University*, 123 F.3d 665, 670 (7th Cir. 1997). Further, "[p]retext means more than a mistake on the part of the [defendant]; pretext 'means a lie, specifically a phony reason for some action.'" *Wolf v. Buss (America), Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (citations omitted); *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998) (plaintiff must show that the defendants "lied about [their] proffered explanation" for the why they took the adverse action that they did).

Davis has not provided any reason to doubt defendants' explanation that Czepiel was the more qualified and dependable employee. Although there is some suggestion in the documents Davis submitted to the EEOC that she felt she was the most qualified candidate, Davis' subjective belief regarding her qualifications is not evidence of pretext. *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 481 (7th Cir. 1995) ("Even a 'bad' business decision does not violate Title VII if the basis of the decision is neither discriminatory nor retaliatory"). For these reasons, the Court grants defendants' motion for summary judgment on Count 1.

*Count 2: Retaliation*

In Count 2, Davis asserts that defendants refused to promote her in retaliation for filing an EEOC complaint in 1994. The 1994 EEOC complaint related to Davis' concerns that another employee, Isabell Klein, was treated more favorably than she was. Davis alleges that the defendants refused her the 1997 promotion in retaliation for this earlier complaint. Title VII makes it unlawful for an employer to retaliate against its employees for opposing a

discriminatory employment practice. *See* 42 U.S.C. § 2000e-3(a). "[A] claim of retaliation under Title VII can be proven by 'either offer[ing] direct evidence of retaliation or proceed[ing] under a burden-shifting approach.'" *Alexander*, 263 F.3d at 682 (quoting *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 601 (7th Cir. 2001)).

Davis offers no direct evidence that defendants' failure to promote her stemmed from the filing of the EEOC claim, so she must proceed under the burden-shifting method. To establish a prima facie case of retaliation, Davis must show that (1) she engaged in protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the two. *Logan*, 259 F.3d at 640 (citing *Oates v. Discovery Zone*, 116 F.3d 1161, 1172 (7th Cir. 1997)). Defendants argue that Davis cannot satisfy the final element of the prima facie inquiry because she cannot show a causal link between her earlier EEOC complaint and the failure to promote in 1997. We agree. The substantial time lag between the two events undercuts Davis' claim, and she has provided no evidence that could convince a reasonable jury that there is any connection between the two. *See, e.g., Johnson*, 70 F.3d at 480 (noting that time lapse between events is "counter-evidence of any causal connection" and finding that 20 month and 16 month lapses were too long to show a causal connection).

Even if we assume that Davis can clear the prima facie hurdle, her retaliation claim still fails. Again, defendants have offered a legitimate reason for not promoting Davis -- that Davis was less qualified than the candidate who was hired; again, Davis offers no evidence to suggest that this proffered reason was not the real reason. *See Wolf*, 77 F.3d at 919. Accordingly, we grant summary judgment in defendants' favor on Count 2.

*Count 3: Hostile Work Environment*

-7-

In Count 3, Davis asserts that she was subjected to a hostile work environment. A hostile work environment exists when alleged discriminatory conduct is so "severe or pervasive as to alter the conditions of her employment in a significant way." *E.g., Patton v. Indianapolis Public School Board*, 276 F.3d 334, 339 (7th Cir. 2002). The complaint alleges that defendants' failure to promote Davis based on her race created a hostile work environment. However, as outlined above, Davis cannot establish that defendants failed to promote her based on her race. And though failing to receive the promotion likely was unpleasant for Davis, a failure to promote on its own does not rise to the level of a hostile work environment. *Id.* ("Title VII 'does not guarantee a utopian workplace, or even a pleasant one' ... As long as the hostility was not based on a protected characteristic, Title VII is not implicated") (citations omitted).

If, in fact, Count 3 refers to the alleged comment of Mikelson in 1993 that he wanted to "break up the blackness" of the clerical pool, Davis' claim fares no better. Even if true, this isolated comment is insufficient to create the pervasively abusive environment that Davis would need to show in order to recover. *E.g., Logan*, 259 F.3d at 641(noting that "[t]he workplace that is actionable is the one that is 'hellish'" and finding that three racially charged comments made by the defendant did not rise to the level of a hostile work environment) (citations omitted); *Jefferson v. City of Chicago*, No. 97 C 4895, 2000 WL 1368036 (N.D. Ill. 2000) (racial remarks made by one individual on one day not enough to create hostile environment). Accordingly, we grant defendants' motion for summary judgment on count 3.

The complaint appears to suggest that Davis is also making a constructive discharge claim. Paragraph 15 of the complaint alleges that "[a]s a direct result of the unfair employment practices of all named Defendants, Plaintiff was forced into early retirement."

However, when an employee alleges constructive discharge based on discriminatory conduct, the employee must "demonstrate a discriminatory work environment 'even more egregious than the high standard for [a] hostile work environment.'" *Equal Employment Opportunity Commission v. University of Chicago Hospitals*, 276 F.3d 326, 331-32 (7th Cir. 2002) (citations omitted). Given our analysis above, Davis' claim for constructive discharge (to the extent she is making one) is rejected.

Finally, defendants argue that the employee defendants may not be sued in their individual capacities. This argument is moot based on our analysis above.

## Conclusion

For the reasons stated above, defendants' motion for summary judgment [item # 8-1] is granted. The Clerk is directed to enter judgment in favor of the defendants.

Dated: June 17, 2002

MATTHEW F. KENNELLY
United States District Judge